THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| NOREEN REYES, BRENDA MARIE TAMEZ INDIVIDAULLY AND AS NEXT FRIEND OF ARIEL MONIQUE REYES, AMBER MARIE REYES, ELIJAH CHRISTOPHER REYES, AND NOAH DAMIAN REYES, minor children, Individually and as Wrongful Death and Survival Beneficiaries of and estate representatives of, CHRISTOPHER REYES, Deceased  *Plaintiffs*  §§§§§§§§§§§§ | CIVIL ACTION NO. 19-CV-379  (JURY REQUESTED) |
| VS. §§§ | |
| CITY OF EDINBURG, the parent entity of the Edinburg Police Department  *Defendant* §§§§ | |

## PLAINTIFFS' THIRD AMENDED COMPLAINT

TO THE HONORABLE COURT:

NOREEN REYES, BRENDA MARIE REYES, Individually and as next friend of Ariel Monique Reyes, Amber Marie Reyes, Elijah Christopher Reyes and Noah Damian Reyes, minor children, Individually and as Wrongful Death and Survival Beneficiaries of, CHRISTOPHER REYES, Deceased ("Plaintiffs") file this Plaintiff's Third Amended Complaint complaining of THE CITY OF EDINBURG, THE PARENT ENTITY OF THE POLICE DEPARTMENT ("Defendant"), and respectfully shows as follows.

## I.
## PARTIES

1. Plaintiffs' are residents of Edinburg, Hidalgo County, Texas.

2. Defendant, the City of Edinburg is a sovereign entity incorporated in the Hidalgo County Texas and the City of Edinburg Police Department, Texas, is a police department of the

State of Texas created by the City of Edinburg, Texas, in Hidalgo County, Texas and may be served with process by serving the City Manager, Juan Guerra in the Edinburg City Hall at 415 W UNIVERSITY DR. EDINBURG, TEXAS 78539. The City of Edinburg is a Municipality subject to Sec. the Texas Practice and Remedies Code Section 101.0215: LIABILITY OF A MUNICIPALITY.  (a)  A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

   (1)  police and fire protection and control; and therefore, is responsible for the actions of employees of the Edinburg Police Department.

3. Defendant, city of Edinburg, is also sued under 42 U.S.C. Sec. 1983 and Sec. 1988 under a theory of municipal liability under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978) since its policymaker endorsed an official policy –or custom or practice—that was the moving force behind the constitutional violations that led to Christopher Reyes' untimely death.

## II.
## JURISDICTION AND VENUE

4. This is a civil action for damages brought pursuant to 42 U.S.C. Sec. 1983 and Sec. 1988. This court has subject-matter jurisdiction over the claims in this matter pursuant to 28 U.S.C. § 1331 because federal questions arise from the claims under the Constitution and laws of the United States of America.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because all of the events, acts and omissions giving rise to the claims occurred in Hidalgo County, Texas, which is within the Southern District of Texas, McAllen Division.

6. This court has supplemental jurisdiction to address plaintiff's state law claims under 28 U.S.C. Sec. 1367 because the state law claims are so related that they make up the same case or controversy under Article III of the United States Constitution.

## III.
## FACTUAL BACKGROUND

7. On or about June 18, 2017, Noreen Reyes called for EMS and the Edinburg Police to request a civil standby, so Christopher could be transported to the hospital for detoxification.

8. Edinburg Police Officer Sarah Rodriguez arrived first, followed one minute later by Officer Rodolfo Lejia.

9. When Officer Rodriguez arrived, Mr. Reyes was on the ground.

10. Officer Rodriguez attempted to roll Mr. Reyes over to handcuff him but was unsuccessful. She was ultimately assisted by Officer Lejia.

11. Mr. Reyes was taken to Officer Rodriguez' police vehicle #1405 (a Ford Explorer) and was placed face down on the back seat, while handcuffed behind his back.

12. When EMS arrived, officer Lejia told EMS that he would not release Mr. Reyes to be transported because Mr. Reyes was being "combative" so EMS left the scene. According to other witnesses, Mr. Reyes was not acting combative.

13. Officer Rodriguez contacted Sergeant James Ramirez and briefed him on the incident. Sergeant Ramirez gave Officer Rodriguez the following direction:
    a. She was told to arrest Mr. Reyes for Public intoxication

    b. She was to transport Mr. Reyes to the Edinburg Police Department to pick up leg shackles

    c. She was to shackle Mr. Reyes and then transport him to the hospital for evaluation.

14. According to the Hidalgo County Sheriff's Department Investigation of the incident:

    a. Mr. Reyes slid off the seat and ended up head down between the rear seat and the security screen of the police vehicle. The incident was captured at 1211:41 of Officer Rodriguez' police vehicle dash camera recording.

    b. At 1211:46 of the dash camera video, Officer Lejia checked Mr. Ramos through the rear passenger side window but Mr. Lejia took no corrective action to readjust Mr. Reyes' body position.

    c. Mr. Reyes stomach stopped moving on the video at 1216:48 of the dash camera video, which indicated no respiration approximately five minutes after Officer Lejia failed to take corrective action to readjust Mr. Ramos. Dr. Farley reported that Mr. Reyes' face and upper body could not be seen on the dash camera video due to Mr. Reyes' face and upper body being stuck, wedged, or lodged in a position between the back seat and the metal cage barrier. Mr. Reyes' hands were cuffed behind his back making it impossible for him to gain leverage and remove himself from the wedged position he was in, which ultimately caused his death by asphyxiation.

4

  d. At 1218:37 of the dash camera video, Officer Lejia opened the rear driver's side door and notices Mr. Reyes not responsive. He tells Officer Rodriguez to call EMS back to the scene.

  e. At 1220:33 of the dash camera video, Officer Lejia pulls Mr. Reyes out of the vehicle and lays him on the ground.

  f. Mr. Reyes was firmly wedged between the seat and cage so Officer Lejia had difficulty extracting Mr. Reyes.

  g. At 1223:13 of the dash camera video, EMS returns to the scene and transports Mr. Reyes to the hospital.

15. Mr. Reyes died as a result of Edinburg Police Department's deliberate indifference towards his compromised body position in the back seat of Officer Rodriguez's police vehicle.

IV.
**COUNT 1: CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. SEC. 1983—MUNICIPAL LIABILITY FOR CONDITION OF CONFINEMENT AND EPISODIC ACTS**

16. Plaintiffs re-allege and incorporate the factual allegations set forth in paragraphs 1 through 15 as though set forth herein.

17. The conditions surrounding Mr. Reyes' imprisonment in the police vehicle resulted in an extreme deprivation of the minimal measure of life's necessities. More specifically, while Mr. Reyes' hands were cuffed behind his back he fell into a position in the back seat of a police vehicle that led to his death by asphyxiation. Being deprived of oxygen without personal mobility is a risk so grave that it objectively violates contemporary standards of decency.

18. Officer Lejia, acting under color of law for the City of Edinburg, was aware of the facts from which the inference could be drawn that Mr. Reyes could experience asphyxiation

while in the back of Officer Rodriguez's police vehicle. More specifically, at 1211:46 of the dash camera video, Officer Lejia checked Mr. Ramos through the rear passenger side window and witnessed the wedged position Mr. Reyes was in. Officer Lejia then drew the inference that Mr. Reyes could experience asphyxiation because the dash camera video shows that instead of readjust Mr. Reyes' body position he decided to take no corrective action and just walked away. In the alternative, the risk of harm to Mr. Reyes was so obvious from the condition of confinement that Mr. Lejia deliberate indifference can be inferred. *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) ("We may infer the existence of his subjective state of mind from the fact that the risk of harm is obvious." (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Mr. Lejia's deliberate indifference was at all times a result of following the policy or custom, described in detail below, that was the moving force leading to the constitutional violation.

19. Officer Lejia's actions were the result of the official policy or custom that existed at the police department of the City of Edinburg, Texas Police Department. The policy or custom at issue here is the manhandling of pretrial detainees by physically forcing them into the back of a police vehicle without properly securing detainees for transport on public roads. The policymaker, the City of Edinburg chief of police or, in the alternative, the city manager, knew about the policy or custom described above. Yet, the City of Edinburg chief of police or city manager was deliberately indifferent towards the policy or custom. More specifically, the policymaker knew that pretrial detainees were being forced into police vehicles without properly securing them for transport with hands cuffed behind their backs and drew the inference from the policy or custom that substantial risk of asphyxiation existed, as arose in the case at bar. The policy or custom was not reasonably related to a

legitimate governmental object because any other passenger in a motor vehicle in the Sate of Texas are required to be secured for transport by a seat belt. This episodic act or omission by Edinburg police officers demonstrates a pervasive pattern of serious deficiencies in providing for pretrial detainees' basic human needs. The policy or custom created an unconstitutional condition of confinement that was the moving force leading to Mr. Reyes' untimely death by asphyxiation.

20. The Due Process Clause of the Fourteenth Amendment requires constitutionally valid conditions of confinement for pretrial detainees to avoid cruel and unusual punishment. *Graham v. Connor*, 490 U.S. 386 (1989). Mr. Reyes was a pretrial detainee because at the time of the incident he was not a convicted inmate.

### COUNT 2: CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. SEC. 1983—MUNICIPAL LIABILITY FOR INADEQUATE MEDICAL CARE

21. The City of Edinburg is a person under *Monell v. Dept't of Soc. Servs.*, 436 U.S. 658 (1978) and is subject to 42 U.S.C. §1983 as acting under color of law in the violation of Mr. Reyes' constitutional right to adequate medical care while incarcerated as a pretrial detainee.

22. The City of Edinburg incurred municipal liability through: (1) its official policy or custom of turning EMS services away from pretrial detainees prior to booking them into the city jail; (2) the City of Edinburg's Chief of Police, as the final policymaker, knew that the policy or custom caused delays in treatment and that during an acute medical emergency the policy or custom would lead to serious harm or even death. The policymaker knew that police officers, as medical laypersons, are not trained to diagnose or treat a medical emergency. When EMS arrived, officer Lejia told EMS that he would not release Mr. Reyes to be transported because Mr. Reyes was being "combative" so EMS left the scene. According to other witnesses, Mr. Reyes was not acting combative. The facts show that

the policy or custom was the moving force behind the constitutional violation at bar. The policy or custom is not reasonably related to a legitimate governmental objective since paramedics were at the scene ready to treat Mr. Reyes for his medical emergency. The policy or custom was shortsighted and illegitimate because its objective was to address an alleged criminal act of public intoxication instead of the underlying medical objective for the 911 call made by Mr. Reyes' mother at the outset.

23. The City of Edinburg's chief of police acted with deliberate indifference as he was aware that non-medically trained police officers were serving as the gatekeepers to medical emergencies and therefore drew the inference that a non-medically trained police officer would: (1) misdiagnose medical emergencies; and, (2) deprive urgent critical care treatment resulting in serious injury or death to pretrial detainees prior to booking them into the city jail for processing. The policy maker knew that the policy or custom existed and disregarded the excessive risk to Mr. Reyes' health or safety. The policy maker was aware of the policy or custom from which the inference could be drawn that a substantial risk of serious harm exists to Mr. Reyes and he draw the inference. Therefore, the police chief showed deliberate indifference, via the policy or custom, towards Mr. Reyes' Fourteenth Amendment right to medical care as a pretrial detainee.

**COUNT 3: NEGLIGENCE USE OF TANGIBLE PERSONAL PROPERTY OWNED BY THE CITY OF EDINBURG UNDER THE TEXAS TORT CLAIMS ACT**

24. Plaintiffs re-allege the factual allegations asserted above as through explicitly described herein.

25. On the occasion in question, the defendant owed a legal duty to the Decedent, Mr. Reyes, under Texas Civil Practice & Remedies code 101.001, because he was a pretrial detainee

under full custody and control of Officer Rodriguez and Officer Lejia, who were agents of the City of Edinburg acting under color of law.

26. Plaintiffs' Texas Tort Claims Act claim is based on the negligent use of tangible personal property, to wit: (1) the backseat of the police vehicle as a temporary quarter for detention; and (2) handcuffs as tool for restraint. Officer Lejia's negligent use of the tangible personal property list above was the proximate cause of Mr. Reyes' death.

27. Mr. Lejia was under a "special relationship" with Mr. Reyes as a matter of law because Mr. Reyes was a pretrial detainee to which Mr. Lejia exercised complete control over Mr. Reyes' mobility.

28. Since a special relationship existed between Mr. Lejia and Mr. Reyes, Mr. Lejia had the duty to exercise reasonable care in performance of his responsibilities as a police officer for the City of Edinburg.

29. The Defendant, by and through Mr. Lejia, breached the duty of care in the following respects:

    (a) The defendant failed to act with reasonable care when Mr. Lejia saw Mr. Reyes wedged between the metal cage and the back seat of the police vehicle with his hands cuffed behind his back and did not take corrective action to discontinue use of the tangible personal property that restrained Mr. Reyes. At that point, Mr. Lejia knew or should have known that he was negligently using the police vehicle and handcuffs as tangible personal property to restrain Mr. Reyes. Mr. Reyes' lack of mobility was directly affected Mr. Lejia's negligent use of the handcuffs

and the backseat of the police vehicle, which led to his death by asphyxiation.

30. The acts of Defendant, pled in paragraphs 7-26 herein proximately caused Plaintiffs' injuries. First, Mr. Lejia's negligent use of the police vehicle and handcuffs was the cause-in-fact of Mr. Reyes' death because but for the negligent use of the handcuffs in the police vehicle, Mr. Reyes would have been able to use his hands to gain leverage to get out of the wedged position he fell into. Second, the injury was foreseeable because Mr. Lejia saw Mr. Reyes in the compromised position that led to his death and did not take corrective action to readjust Mr. Reyes.

31. The defendant, the City of Edinburg, as the parent entity of the Edinburg Police Department, may be held to answer in a court of law for the occurrence just described because the plaintiffs' claims assert that an employee of the defendant Edinburg Police Department was negligent in subjecting Mr. Reyes to injury and death. Sovereign immunity is waived under the Texas Tort Claims Act because Mr. Reyes' injury and death arises from the use of tangible personal property and a government owned vehicle by the defendant City of Edinburg performing a governmental function.

32. At all times material, all of the agents, servants, and employees of the defendant who were in any way connected with the occurrence were acting within the course and scope of their employment or official duties and in furtherance of the duties of their office or employment.

33. At all relevant times, the defendant has had actual notice of the plaintiff's claim and cause of action because the incident forming the basis of this action was investigated by the Edinburg Police Department. As a result of that investigation, the Edinburg Police

Department acquired full, complete, and actual knowledge of the occurrence giving rise to the plaintiff's cause of action and that the plaintiff was asserting a claim based on the occurrence prior to the filing of this lawsuit.

## V.
## DAMAGES

34. As a direct result of the incident in question, Christopher Reyes sustained fatal injuries. Christopher Reyes died intestate and Noreen Reyes, Brenda Marie Reyes and minor children Ariel Monique Reyes, Amber Marie Reyes, Elijah Christopher Reyes and Noah Damian Reyes are his rightful heirs. Further, there are no estate debts for the Estate of Christopher Reyes.

35. During his lifetime, Christopher Reyes was a loving and devoted son/husband/father to Noreen Reyes, Brenda Marie Reyes and minor children Ariel Monique Reyes, Amber Marie Reyes, Elijah Christopher Reyes and Noah Damian Reyes. As a result of his untimely death, Plaintiffs, Noreen Reyes, Brenda Marie Reyes and minor children Ariel Monique Reyes, Amber Marie Reyes, Elijah Christopher Reyes and Noah Damian Reyes, have suffered the loss of companionship and society, including the loss of the positive benefits flowing from the love, comfort, companionship, and society that he, in reasonable probability, would have received from Christopher Reyes, had he lived. Noreen Reyes, Brenda Marie Reyes and minor children Ariel Monique Reyes, Amber Marie Reyes, Elijah Christopher Reyes and Noah Damian Reyes have also suffered mental anguish, including the emotional pain, torment, and suffering experienced by them because of the untimely death of Christopher Reyes. Plaintiffs state and federal law claims, regarding the death of Christopher Reyes, is instituted under Texas Civil Practices and Remedies Code, Chapter 71, Subchapter A, commonly referred to as the "Wrongful Death Statute."

36. Plaintiffs seek to recover the following elements of damages:

    A. Wrongful Death.

    B. Pecuniary loss in the past and future, including but not limited to the loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that they would have received from Decedent had she lived;

    C. Loss of companionship in the past and future, including but not limited to the loss of the positive benefits flowing from the love, companionship, comfort, and society that they would have received from Decedent had he lived; and

    D. Mental anguish in the past and future, including but not limited to the emotional pain, torment, and suffering experienced in the past, and to be experienced in the future, because of Decedent's death.

    E. Survival Action.

        a. Pain and mental anguish, including the conscious physical pain and emotional pain, torment, and suffering Decedent experienced before her death;

        b. Medical expenses; and

        c. Funeral and burial expenses.

    F. Plaintiffs seek to recover prejudgment interest, post judgment interest, and court costs.

34. Plaintiff, Estate of Christopher Reyes, by and through his estate representatives, seeks recovery of an award for the Estate of Christopher Reyes including the following;

    (a) Christopher Reyes' conscious pain and suffering experienced prior to his death;

    (b) Christopher Reyes' loss of life and earnings both past and future:

    (c) Recovery of Attorney's fees and costs of court; and

    (d) Pre-judgment and post-judgment interest as allowed by law.

35. Plaintiffs' also seek to recover a prejudgment interest, post-judgment interest, and court costs. Plaintiffs' damages exceed the Court's jurisdictional minimum.

## VI.
## DEMAND FOR JURY TRIAL

36. Plaintiffs demand a jury trial and tenders the appropriate fee with this petition.

## VII.
## PRAYER

37. For these reasons, Plaintiff asks that the Court issue citations for Defendants to appear and answer, and that Plaintiff be awarded a judgment against Defendant for all damages described herein, including actual damages, attorney's fees, cost of suit, interest as allowable by law and for such other relief, in law and in equity, to which Plaintiffs may be justly entitled. Additionally, Plaintiffs pray that upon trial on the merits hereof, they recover their damages as set forth herein and their attorney's fees and costs expended in preparing, prosecuting and trying this case, in accordance with 42 U.S.C. Sec. 1983 and Sec. 1988.

WHEREFORE, the plaintiffs request that the defendant be cited to appear and answer, and that on final trial the plaintiffs have:

   A. Judgment against the defendant for the actual and special damages suffered by the plaintiffs as a result of the defendant's conduct, in an amount within the jurisdictional limits of the court.

   B. Costs of suit.

   C. Prejudgment and postjudgment interest as provided by law.

   D. Such other and further relief to which the plaintiff may be justly entitled.

Respectfully submitted,

**Stapleton & Stapleton**
2401 Wildflower Drive, Suite C
Brownsville, TX 78526
Tel: (956) 504-0082
Fax: (956) 504-08114

/s/ *Ed Stapleton*
_____

Ed Stapleton
**Attorney-in-Charge**
Texas State Bar No. 19058400
stapletonstapleton@icloud.com

/s/ Michael Gonzalez_____
MICHAEL GONZALEZ
Texas State Bar No. 24077594
623 E. St. Charles St.
Brownsville, Texas 78520
Telephone (956) 572-6792
Fax: (512) 532-0307
**ATTORNEYS FOR PLAINTIFFS**


### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 22, 2019, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court and was served via the Court's CM/ECF System which will automatically provide electronic notice upon all counsel of record.

*/s/ Ed Stapleton*